UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/27/2021_____

UNITED STATES OF AMERICA,

     -against-

PERRY GUMBS,

                    Defendant.

No. 16-cr-0821 (NSR)
No. 18-cv-6898 (NSR)

**ORDER & OPINION**

NELSON S. ROMÁN, United States District Judge:

     Petitioner Perry Gumbs ("Gumbs") was sentenced to 62 months' imprisonment, to run concurrently with Gumbs' state sentence, on one count of conspiracy to distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and one count of possessing a .25 caliber firearm with a defaced serial number, in violation of 18 U.S.C. § 922(k). Gumbs, proceeding *pro se*, now moves pursuant to 28 U.S.C. § 2255 ("Section 2255") to vacate, set aside or correct his sentence. Specifically, he asks that the Court reduce his sentence by 13 months to remedy errors resulting from alleged ineffective assistance of counsel. The Government opposes the motion. For the following reasons, the motion is DENIED.

## BACKGROUND

     Sometime prior to May 5, 2015, the Federal Bureau of Investigations and the Orange County Sheriff's Office investigated the conduct of Gumbs. (Pre-Sentence Report "PSR" § 14.) On May 5, 2015, a cooperating witness purchased approximately 6.5 grams of crack cocaine from Gumbs in exchange for $350. (PSR § 15.) Between May 5, 2015 and June 18, 2015, the Government conducted several more controlled purchases in which Gumbs sold additional crack cocaine and a pistol to the cooperating witness. (PSR §§ 16-21.)

On September 23, 2015, Gumbs was arrested by the Orange County Sheriff's Office after a shotgun and .22 caliber revolver were found in his bedroom during an inspection of his residence.  (PSR § 19.)  Gumbs subsequently pleaded guilty in Orange County Court, Goshen, New York to attempted criminal weapon possession in the Third Degree and was remanded. (PSR § 19.)  On May 19, 2016, Gumbs was sentenced in New York State court to 16 months to four years imprisonment for this offense.

On August 24, 2016, while Gumbs was in the custody of the New York State Department of Corrections, he was arrested on a federal writ.  (PSR § 10.)  On August 24, 2016, Gumbs was charged in a four-count complaint with two counts of narcotics distribution in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)C), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one of count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(k).  (Complaint (ECF No. 3[1]).)  During arraignment, defense counsel Paul Peter Rinaldo ("Rinaldo") was assigned to represent Gumbs.

On November 11, 2016, the Government extended a plea offer and plea transmittal letter offering to allow Gumbs to plead guilty to a single violation of 18 U.S.C. § 924(c) in exchange for dismissal of all other charges.  (*See* Exhibit A to Government's Opposition to Perry Gumbs' Petition Pursuant to 28 U.S.C. § 2255 ("Gov. Ex. A") (ECF No. 38-1).)   In early December 2016, Gumbs rejected the plea offer.

On or about December 14, 2016, Gumbs was charged in a five-count indictment with one count of conspiracy to distribute 28 grams and more of crack cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(B); two counts of distributing crack cocaine in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); one count of possessing a firearm in furtherance of a drug crime in

---

[1] Except as indicated otherwise, citations to ECF entries refer to the criminal action 16-crim-821.

violation of 18 U.S.C. § 924(c); and one count of possessing a .25 caliber firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).  (*See* Indictment (ECF No. 12).) Defendant was arraigned on the indictment (Minute Entry dated December 14, 2016), and the parties engaged in discovery through March 2017 (*See* Minute Entry dated February 16, 2017 & Minute Entry dated March 30, 2017.)

On or about May 2, 2017, the Government extended a second plea offer which contemplated Gumbs pleading guilty to one count of conspiracy to distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and one count of possessing a .25 caliber firearm with a defaced serial number in violation of 18 U.S.C. § 922(k).  (*See* Exhibit C to Government's Opposition to Perry Gumbs' Petition Pursuant to 28 U.S.C. § 2255 ("Gov. Ex. C") (ECF No. 38-3).)  Pursuant to the plea offer, Gumbs was subject to a mandatory minimum of five-years incarceration and a Sentencing Guidelines Range of 60 to 71 months imprisonment.

During this time, Gumbs affirms that Rinaldo told him "that the government would run [his] State sentence with [his] federal sentence."  (Exhibit A to Gumbs' Traverse to Government's Opposition to Petitioner's Section 2255 Motion ("Gumbs Ex. A") (ECF No. 41).) In other words, Rinaldo led Gumbs to believe that he would receive credit towards his federal sentence during his pretrial detention.

On May 18, 2017, the Court was scheduled to hold a change of plea hearing, however, Gumbs declined to enter a plea agreement and requested new counsel be appointed.  (Minute Entry dated May 18, 2017.)  Subsequently, on May 25, 2017, the Court held an attorney appointment hearing, granted Defendant's request to relieve Rinaldo as counsel of record, and

appointed Mary Anne Wirth ("Wirth") as CJA counsel of record.  (Minute Entry dated May 25, 2017.)

Sometime after May 25, 2017, but before July 9, 2017, Wirth spoke with an employee of the Federal Bureau of Prisons and discovered that Gumbs' federal sentence did not begin to run when he was produced by a federal writ from state custody on August 24, 2016.  Instead, his federal sentence could not commence until state authorities determined that he had satisfied his state sentence.  Pursuant to 18 U.S.C. § 3585(a), a sentence of imprisonment "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of a sentence at, the official detention facility at which the sentence is to be served."  However, a federal defendant transferred from the custody of a state for prosecution by a federal writ is not considered under federal custody under 18 U.S.C. § 3585(a).  *See Miller v. United States*, 826 F. Supp. 636, 638 (N.D.N.Y. 1993).

Between June 22, 2017 and June 30, 2017—presumably after discovering that Gumbs was not receiving any credit towards his federal sentence—Wirth advised the Government that Gumbs would accept a plea agreement, and the Government sent a revised plea offer with nearly identical terms to the second plea offer.  (*See* Exhibit D to Government's Opposition to Perry Gumbs' Petition Pursuant to 28 U.S.C. § 2255 ("Gov. Ex. D") (ECF No. 38-4).)  Soon afterwards, on July 13, 2017, Gumbs pleaded guilty plea to Counts One and Five of the Indictment before Magistrate Judge Judith C. McCarthy.

During the change of plea hearing, Gumbs testified that, among other things, (1) he was satisfied with Wirth's representation of him (Change of Plea Hearing Tr. 10:5-7 (ECF No. 31)), (2) he told his attorney everything he knows about the case (Change of Plea Hearing Tr. 10:10), (3) he understood the Court would impose a sentence in accordance with the relevant statute

including a maximum sentence of forty-five years (Change of Plea Hearing Tr. 18:3), and (4) he understood that, under the plea agreement, he was agreeing not to file a direct appeal nor bring a collateral challenge, including but not limited to an application under Section 2255, nor seek a sentence modification of any sentence at or below the stipulated guideline range of 60 to 71 months imprisonment (Change of Plea Hearing Tr. 19:5.)  Pursuant to the plea agreement, Gumbs agreed not to file a direct appeal nor bring a collateral challenge including an application under Section 2255 except that this waiver should "not be construed to be a waiver of whatever rights the defendant may have to assert ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.  Rather, it is expressly agreed that the defendant reserves those rights."[2] (Gov. Ex. D at 5.)

During sentencing, the Government advocated for a sentence of 60 months imprisonment to run consecutively with Gumbs' pending state conviction.  (Sentencing Transcript ("Sentencing Tr.") 12:18 (ECF No. 32).)  Gumbs' new counsel, Wirth, argued that Mr. Rinaldo failed to inform Gumbs that he had not received any credit towards his federal sentence during his pretrial detention.  (Sentencing Tr. 13:3-10.)  Likewise, Wirth argued that "if [Gumbs] knew that information, there would have, of course, been a greater sense of urgency" and requested that the Court take that into account during sentencing.  (Sentencing Tr. 13:13-18.)

Considering all of the factors set forth in 18 U.S.C. § 3553(a) and the arguments advanced by the Government and counsel for Gumbs, the Court concluded that a sentence of 62 months imprisonment to be served concurrently with the remainder of Gumbs' undischarged

---

[2] Government, by not arguing that Gumbs waived his right to collaterally challenge his sentence due to ineffective assistance of counsel, appears to concede that the terms of Gumbs' plea agreement preserve his claim.  The Second Circuit has interpreted an identical provision in a waiver agreement to preserve a petitioner's claim of ineffective assistance of counsel. *See United States v. Viles*, 668 F. App'x 371, 372 (2d Cir. 2016).  In any event, this Court concludes that Gumbs' claim of ineffective assistance of counsel was preserved.

New York State sentence was sufficient but not greater than necessary to promote the proper objectives of sentencing.  (Sentencing Tr. 25:17-26:5.)

## **LEGAL STANDARD**

A motion under 28 U.S.C. § 2255 is an extraordinary remedy.  *See Moyhernandez v. United States*, No. 02 Civ. 8062 MBM, 2004 WL 3035479 (S.D.N.Y. Dec. 29, 2004). 28 U.S.C. § 2255(a) provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

§ 2255(b) provides, in relevant part:

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A plain reading of the statute contemplates providing a mechanism to detained individuals who seek judicial relief from a wrongfully imposed sentence. It is well settled that § 2255 provides a collateral remedy and not a remedy for an appeal such that it can used to challenge the sufficiency of the evidence."  *United States v. Graham*, No. 14-CR-500 (NSR), 2018 WL 798742, at *1 (S.D.N.Y. Feb. 7, 2018) (citing *Dansbay v. United States*, 291 F. Supp. 790 (S.D.N.Y. 1968); *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  "In order to reverse a conviction based on ineffective assistance of counsel, there must be a showing that counsel's assistance was constitutionally deficient and that such deficiency prejudiced the defense so as to deprive the Defendant of a fair proceeding."  *United States v. Scali*, No. 16-CR-466 (NSR), 2018 WL 3536082, at *4 (S.D.N.Y. July 23, 2018) (citing *Strickland*, 466 U.S. at 687–693).

"When evaluating counsel's performance, judicial scrutiny must be highly deferential and must not serve as an opportunity to act as a Monday morning quarterback.  In order to reverse a conviction based on ineffective assistance of counsel, there must be a showing that counsel's assistance was deficient and that such deficiency prejudiced the defense so as to deprive the defendant of a fair proceeding."  *United States v. Rhyne*, No. 15-CR-05-01 (NSR), 2018 WL 1834468, at *3 (S.D.N.Y. Apr. 16, 2018) (citations omitted).

"Generally, a defendant suffers prejudice if there is a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings."  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).  To establish prejudice under *Strickland*, "our precedent requires some objective evidence other than defendant's assertions" to corroborate a claim that a plea offer would have been accepted, but for counsel's errors.  *Id.* at 182.  This requirement of objective evidence may be satisfied by a "significant sentencing disparity" between the plea offer and the sentence after a trial conviction.  *Id.* at 182–83.

## DISCUSSION

Gumbs argues that his initial defense counsel, Rinaldo, provided ineffective assistance of counsel by either failing to advise him that he was not receiving credit toward his federal sentence during his pretrial detention, or affirmatively misleading him that he would in fact

receive credit toward his federal sentence during pretrial detention.  He argues that, absent this ineffective assistance of counsel, he would have accepted a plea agreement (and been sentenced) at an earlier date, and consequently would have ultimately served a shorter term of incarceration because he would have begun to receive credit at an earlier date assuming that he received a comparable sentence.

The Government responds that Rinaldo's alleged failure to advise Gumbs regarding the lack of credit towards his federal sentence during his pretrial detention does not qualify as ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984) for two reasons.  First, the failure to convey the minute details of a complicated procedure within the Bureau of Prisons does not fall so far beyond the bounds of reasonable legal practice that it essentially deprives the defendant of counsel.  Second, Gumbs has failed to provide objective evidence that he has been prejudiced because he did not receive a plea offer capable of running concurrent with his state sentence until approximately two months before he ultimately pled guilty and there is no evidence that an earlier plea agreement would have resulted in a different sentence.

For the reasons discussed below, the Court agrees with the Government.

## I.        Whether an Evidentiary Hearing is Required

As an initial matter, "[i]n deciding a § 2255 motion, a district court must hold a hearing [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.  Under this standard, a movant's entitlement to such a hearing is not automatic because '[t]o warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief.'"  *Hill v. United States*, No. 11 CR. 145 LAP, 2014 WL 104565, at *4 (S.D.N.Y. Jan. 7, 2014) (quoting *Gonzalez v. United States*, 722 F.3d 118, 131 (2d

Cir. 2013).  "Moreover, a hearing is unnecessary where a movant 'fail[s] to state a plausible claim for relief under 28 U.S.C. § 2255.'"  *Hill*, 2014 WL 104565, at *4 (quoting *Puglisi v. United States*, 586 F.3d 209, 218 (2d Cir. 2009)).

Here, there are no real factual disputes and the Court has a record that is sufficient to adjudicate the instant motion without a hearing.  Admittedly, the Court is somewhat skeptical of Gumbs' affirmation that Rinaldo advised him that he would receive credit towards his federal sentence for his pre-conviction detention.  First, Gumbs made the opposite argument in his opening memorandum — *i.e.*, that "Rinaldo never advised [him] that the Federal Bureau of Prison Federal sentence did not begin to run when he was produced by a Federal Writ from state custody."  (Gumbs' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (ECF No. 34) at 2.)  Second, Gumbs' sentencing submission conveys that his new counsel "learned that Mr. Gumbs had not earned any credit whatsoever toward his federal sentence since his arrest" and that "Mr. Gumbs' previous attorney did not advise him of this information." (Gumbs Sentencing Submission (ECF No. 22) at 3.)  The same argument was raised by Gumbs' defense counsel during sentencing.  (Sentencing Tr. 13:3-10.)  Accordingly, it seems more plausible that Rinaldo did not apprise Gumbs one way or another about whether Gumbs would receive credit towards his federal sentence during the period of time he was incarcerated prior to his conviction.

Even if this Court were to credit Gumbs' affirmation, Rinaldo's failure to provide accurate advice, or his affirmatively misleading guidance, concerning whether Gumbs would receive credit towards his federal sentence during pre-conviction imprisonment did not result in any prejudice.  *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S. Ct. 366, 371, 88 L. Ed. 2d 203 (1985) ("Because petitioner in this case failed to allege the kind of 'prejudice' necessary to satisfy the

second half of the *Strickland v. Washington* test, the District Court did not err in declining to

hold a hearing on petitioner's ineffective assistance of counsel claim.").

**II.        Whether Gumbs was Prejudiced**

Construed liberally, Gumbs' argument is premised on his false impression that he would

receive credit towards his federal sentence for time served prior to his federal conviction and, but

for that misunderstanding, he would have agreed to an earlier plea offer capable of running

concurrently with his state sentence.  But the only plea offer presented by the Government

between November 11, 2016 and May 2, 2017 did not permit a sentence to run concurrently with

his undischarged New York State sentence.  Accordingly, Gumbs only received a plea offer that

could have enabled him to counterfactually reap the benefits of proper legal counsel on May 2,

2017—*i.e.*, approximately two months prior to his acceptance of a nearly identical plea deal.

The first plea offer invited Gumbs to plead guilty to one count of violating 18 U.S.C. §

924, and would not have permitted the Court to impose a sentence that could run concurrently

with Gumbs' prior sentence.  Indeed, pursuant to 18 U.S.C. § 924(c)(1)(D)(ii), "no term of

imprisonment imposed on a person under this subsection shall run concurrently with any other

term of imprisonment imposed on the person[.]"  The Court notes that the plea offer appears to

contain an error with respect to which count of the complaint the Government invited Gumbs to

plead guilty insofar as it states that the Government "will accept a guilty plea . . . to Count One

of the above-referenced Information."  (Gov. Ex. A.)  In fact, count one of the complaint charged

Gumbs with narcotics distribution in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (*See*

Complaint).  However, the plea offer expressly stated that the count to which Gumbs was invited

to plead guilty was "knowingly using, carrying, and possessing a firearm on or about June 11,

2015, during and in relation to and in furtherance of a drug trafficking crime for which the

defendant may be prosecuted in a court of the United States, in violation of Title 18, United

States Code, Section 924(c)(1)(A)(i)."  (Gov. Ex. A.)  Additionally, the description of the minimum and maximum term of incarceration contained in the plea agreement reflected the penalties associated with 18 U.S.C. § 924.  Despite the minor error, the Court concludes there is no ambiguity in the plea offer and that the count offered to Gumbs referred to using a gun in furtherance of a drug trafficking crime in violation of 18 U.S.C.  § 924(c).

Accordingly, the benefit Gumbs claims he was deprived of due to ineffective assistance of counsel—*i.e.*, his acceptance of the first plea offer at an earlier date which, in turn, would have enabled him to receive credit towards his federal sentence starting at an earlier date—would not have been realized through acceptance of the only plea deal offered by the Government until May 2, 2017.  This means that the only potential prejudice experienced by Gumbs was the lapse in time between the Government's second plea offer on May 2, 2017, and his acceptance of a nearly identical third offer on July 13, 2017.  But, as discussed below, this delay did not result in any prejudice because it is highly unlikely that, absent the delay, the Court would have rendered a judgment resulting in Gumbs' preferred outcome.

The acceptance of an earlier plea agreement, whether on May 2, 2017 or on November 11, 2016, would not have changed the outcome here.  The Court, possessing discretion as to whether or not to impose a concurrent or consecutive sentence, determined that Gumbs should receive a sentence of 62 months incarceration to run concurrently with his undischarged state sentence.  The Court considered Gumbs' sentencing advocacy for a more lenient sentence, including that he would have accepted an earlier plea agreement if he received proper advice and that Gumbs did not receive credit towards his federal sentence during the fourteen months he was detained prior to his federal conviction.  The Court also considered arguments from the Government advocating for a sentence that would run entirely consecutive with Gumbs' prior

state sentence.  Considering these arguments, the Court elected a sentence that was both two months in excess of the mandatory minimum range, and running over two years beyond Gumbs' undischarged state sentence.

The Judgment reflected an assessment that a sentence of 62 months incarceration (for which he did not receive credit for his pre-conviction incarceration) was sufficient but not greater than necessary to promote the proper objectives of sentencing.  Stated another way, the Court considered and rejected the argument advanced by Gumbs that a lesser (but available) sentence of 60 months incarceration was sufficient and also rejected the Government's argument that Gumbs' sentence should run consecutively with his prior state court sentence.  It reflected a more lenient sentence than those available to the Court in consideration of the Gumbs' lack of pre-conviction credit towards his federal sentence.  It stands to reason that if Gumbs pleaded guilty at an earlier date, the Court would not have had a similar basis for leniency, and would have (consistent with the actual Judgment) designed a sentence resulting in a similar total length of Gumbs' imprisonment by, for example, imposing a partially concurrent sentence.  Accordingly, the Court cannot conclude that Gumbs would have received a different outcome but for Rinaldo's failure to inform him that he was not receiving credit towards his federal sentence during his pre-conviction incarceration.  *See United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005) (explaining that this Circuit "has not adopted mechanistic rules for determining whether an adequate showing of prejudice has been made, but inquires into the record as a whole to determine whether a reasonable probability exists that absent counsel's error, the outcome of the proceeding would have been different").

Finally, even if all things transpired in the manner Gumbs desired in hindsight—*i.e.*, (1) Gumbs pleaded guilty soon after the initial plea agreement was offered on November 11, 2016,

(2) the Court was capable of ordering a concurrent sentence, and (3) the Court in fact ordered a sentence within the guidelines range contemplated in the first plea agreement (*i.e.*, 60 months imprisonment)—there is no significant disparity between his actual sentence (*i.e.*, 62 months imprisonment) and the plea agreement he was offered (*i.e.*, 60 months imprisonment).  *See Raysor v. United States*, 647 F.3d 491, 495 (2d Cir.2011) (holding that a petitioner's statement that he would have accepted a properly advised plea "must be accompanied by some objective evidence, such as a significant sentencing disparity, that supports an inference that the petitioner would have accepted the proposed plea offer if properly advised").

Even if the Court compared the hypothetical total length of Gumbs' incarceration if he were sentenced at an earlier date with the total incarceration contemplated pursuant to the Judgment, the disparity is not so significant as to objectively evidence prejudice as required under *Strickland*.  Gumbs was sentenced on October 12, 2017.  Had he been sentenced in or around February 2017 to 60 months incarceration to run concurrently with his undischarged state sentence, then, during the period between February 2017 and October 2017, he would have received nine months of credit towards his federal sentence.  A benefit of approximately nine-months is considered relatively minor in this context.  *See, e.g., Moreno v. Smith*, No. 06-CV-4602 (KAM), 2010 WL 2975762, at *20 (E.D.N.Y. July 26, 2010) ("[T]he sentencing disparity is outweighed by another consideration: the negligible disparity between the plea offer of 1 ½ to 3 years imprisonment offered and the 1 year plea bargain demanded by petitioner."); *Dedushaj v. Graham*, No. 07 Civ. 5401(JGK), 2008 WL 4858242 at *6, n. 2 (S.D.N.Y. Nov. 7, 2008) ("[T]he sentencing disparity in this case-the difference between the three years offered in the plea and the five years to which the petitioner was sentenced-was relatively minor."); *Carbajal v. U.S.*, No. 99 Civ. 1916(MGC), 2004 WL 2283658 at *5 (S.D.N.Y. Oct. 8, 2004) ("The difference a

reduction of two years would make to a sentence of fifteen years is not significant . . . Courts which have treated sentence disparities as objective evidence of prejudice in similar situations have consistently required much greater discrepancies.") (citations omitted); *Mask v. McGinnis*, 233 F.3d 132, 141-42 (2d Cir. 2000) (prejudice established based on disparity of sentence and petitioner's statement that he would have accepted plea offer, where petitioner received sentence after trial of 20 to 40 years, and could have received sentence of 8 to 16 years by pleading guilty).

## **CONCLUSION**

For the foregoing reasons, Gumbs' motion pursuant to 28 U.S.C. § 2255 is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 34 on No. 7:16-cr-821 and to terminate the civil action 7:18-cv-6898.  The Clerk of the Court is also respectfully directed to mail a copy of this Opinion to Gumbs at his address listed on ECF and show proof of service on the docket.


Dated:   January 27, 2021                                    SO ORDERED:
         White Plains, New York

                                                   _____
                                                        NELSON S. ROMÁN
                                                   United States District Judge


14